### George H. FOULKE, Kathleen Foulke, Plaintiffs,

v.

### Gerald J. DUGAN, Esquire, Dugan, Brinkmann, Maginnis And Pace, Defendants.

### No. 00 CV 5300.

United States District Court, E.D. Pennsylvania.

Feb. 22, 2002.

---

Edward J. Ross, Randy P. Catalano, Ross & Rubino, LLP, Westmont, NJ, for plaintiffs.

Eric A. Weiss, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for defendants.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

This is a legal malpractice claim brought by plaintiff George Foulke ("Foulke") and his wife (collectively "plaintiffs") against Gerald Dugan ("Dugan") and his law firm (collectively "defendants"). Plaintiffs allege that the defendants were negligent in the handling of a personal injury action in that the defendants (1) failed to inquire about Foulke's marital status, resulting in barring of his wife's loss of consortium claim; (2) failed to properly interview Foulke about the underlying incident, resulting in the failure to pursue a negligence claim in addition to the intentional tort claim; (3) failed to actually conduct an asset check of the individual tortfeasor; (4) failed to withdraw as counsel and permitting plaintiff to pursue his claim pro se; and (5) withdrew the writ of praecipe and summons without consulting with the plaintiff. The case was originally filed in two separate, but identical state court actions, one in Pennsylvania and one in New Jersey. The defendants then removed to federal court on the basis of diversity, and one action was pending in the District of New Jersey and the other in the Eastern District of Pennsylvania. Plaintiffs subsequently filed a motion for remand to the state court in the Pennsylvania action which I denied in June 2001. After denial of that motion, the New Jersey case was transferred to this district and the two actions were consolidated on August 13, 2001. On August 29, 2001, defendants filed a motion for summary judgment, claiming that the plaintiffs' claims were barred by the applicable statute of limitations.

### Factual Background [1]

On February 20, 1996, plaintiff, George Foulke made a delivery, in the course of his employment, to the Budd Company in Philadelphia, Pennsylvania. While on the company's premises, Foulke was involved in an altercation with an employee of that company, Cornelius "Neil" Vinson, and as a result of that incident, Foulke suffered various injuries. At some point in 1997, Foulke consulted with attorney David S. Berman, of the firm of Haymond & Lundy, located in Philadelphia, and requested representation in a lawsuit against the Budd Company and Mr. Vinson. On January 8, 1998, Mr. Berman wrote to Foulke and informed him that his firm would not represent Foulke in his action because they did not believe he had a viable cause of action against either the company or Mr. Vinson. In that same letter, Berman also advised Foulke that if he still wished to pursue his claim, he needed to take action quickly as the statute of limitations on that action would expire on February 20, 1998.[2]

---

1. The factual background of this case is largely undisputed and the facts contained herein have been drawn from the memoranda of law filed by both parties and the exhibits attached to them. To the extent that certain events are disputed, they have been excluded from this introductory discussion, and will be discussed infra and considered in the light most favorable to the non-moving party, in the instant case, the plaintiffs.

2. In relevant part the letter stated, "if you wish to contact another attorney and discuss the facts of this case for a second opinion you must do so or you will be barred from bringing an action against the responsible parties." Letter of January 8, 1998 from David Berman to George Foulke.

Heeding his former attorney's advice, Foulke met with the defendant, Gerald Dugan of the firm Dugan, Brinkmann, Maginnis, and Pace, in his Philadelphia office on January 19, 1998. Three days later, on January 22, 1998, Dugan filed a Praecipe to Issue a Writ of Summons in the Court of Common Pleas of Philadelphia County, naming the Budd Company and Cornelius Vinson as defendants. Over the course of the next month, Dugan obtained certain information by subpoenaing the records of the Budd Company that indicated the company had no prior notice of Vinson's violent behavior and Dugan advised Foulke of the results of his preliminary investigation by letter dated February 24, 1998. After confirming this information, Dugan again wrote to Foulke on March 9, 1998, indicating he would be closing his file and inviting Foulke to contact him with any questions.[3] On May 11, 1998, Dugan filed an Order to Settle, Discontinue, and End Foulke's action against the Budd Company and Neil Vinson in the Court of Common Pleas.

Several months later, in August 1998, Foulke contacted a third attorney, John Dooley, regarding the same tort action and a worker's compensation claim. Plaintiff brought his case file to Mr. Dooley, who after reviewing that file contacted him by phone on August 31, 1998 to inform him that he would be unable to pursue his claim against the Budd Company. Dooley confirmed this phone call in a letter sent to Foulke and dated September 1, 1998. In that letter, Dooley advised Foulke that he could not pursue the action because it had already been settled, discontinued, and ended, pursuant to an order entered on May 11, 1998. Later that month, Foulke visited Dooley's office to pick up his case file and learned, at that time, the implications of the writ filed by Dugan to settle his case. The plaintiffs filed this malpractice action against Dugan and his firm on September 1, 2000.

### Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A court must determine "whether the evidence presents a sufficient [factual] disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, the court has an obligation to consider the evidence and draw all reasonable inferences in favor of the party who has not made the motion. *See Dici v. Com. of Pa.*, 91 F.3d 542, 547 (3d Cir.1996). In addition to contesting the facts and conclusions presented by the moving party, when the nonmoving party " 'bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.' " *Foulk v. Donjon Marine Co., Inc.*, 144 F.3d 252, 258 n. 5

---

**3.** Dugan wrote:

we do not believe there is a viable cause of action here and we will close our file .... we believe it is appropriate to let you know this now, rather than after both of us have expended significant time and emotional effort in pursuit of a claim that we do not believe we can win. If you have any questions, please don't hesitate to call.

Letter of March 9, 1998 from Gerald Dugan to George Foulke.

(3d Cir.1998) (quoting *Wetzel v. Tucker,* 139 F.3d 380, 383 n. 2 (3d Cir.1998)).

Defendants contend that summary judgment is appropriate in this case because there is no genuine issue of material fact to support a finding of liability against them because plaintiffs' claim is barred by Pennsylvania's two-year statute of limitations. Plaintiffs contest this on the grounds that the applicable statute of limitations is New Jersey's of six years, or in the alternative, that the two-year statute does not bar their claims.

### Discussion

#### Choice of Law

■ In a diversity action, the district court must apply the choice of law rules of the forum state to determine what substantive law will govern the claim. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Because this court is located in the state of Pennsylvania, Pennsylvania choice of law rules will govern.

In *Griffith v. United Air Lines, Inc.,* the Pennsylvania Supreme Court was confronted with a choice of law problem. The executor of an estate filed an action in Pennsylvania court for breach of contract and negligence claims arising from a plane crash in Colorado that killed the decedent on a flight en route from Philadelphia to Phoenix. After discussing traditional rules such as "place of the wrong," the court adopted a more flexible approach, enabling courts to analyze the underlying policies and interests in considering what law to apply. While the "place of the wrong" remains a significant part of the inquiry, the court should consider other factors in applying the "significant relationship" test articulated by the Restatement (Second) Conflict of Laws. *See Griffith,* 416 Pa. 1, 203 A.2d 796, 801–806 (1964). Rephrased in a more concise manner, the Pennsylvania Supreme Court subsequently announced that "the jurisdiction having more interest in the problem, and which is more intimately concerned with the outcome is the forum whose law should apply." *Allstate v. McFadden,* 407 Pa.Super. 537, 595 A.2d 1277, 1279 (1991).

■ Under this test, Pennsylvania law applies to the matter at hand. The Restatement (Second) Conflict of Laws § 145 lists four specific factors that are relevant to the determining which jurisdiction has the most significant relationship to the case: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, or place of business or incorporation of the parties; and (4) the place where the relationship between the parties is centered. *See* 1 Restatement (Second) Conflict of Laws § 145 at 414. Here the injury to the plaintiffs, being barred from pursuing their claim in Pennsylvania state court, occurred in Pennsylvania. Similarly, the conduct causing the injury also took place in Pennsylvania. The underlying workplace altercation, the meetings between all of the attorneys involved and plaintiffs, and the alleged misconduct all occurred in Pennsylvania. While the plaintiffs are New Jersey residents, Dugan is a resident of Pennsylvania, and his firm is incorporated and has its principal place of business in Pennsylvania as well. The relationship between the parties is also based in Pennsylvania. Foulke, a New Jersey resident voluntarily chose to seek legal advice from not one, but three separate lawyers, all located in Pennsylvania. It is also worth noting that while a state's interest in regulating members of its bar is not dispositive of a choice of law issue, when the subject of the claim is litigation pending in the state system, it is a strong indication of a state's interest in the out-

come of the matter. *See Schwartz v. Steven Kramer & Associates,* No. 90–CV–4943, 1995 WL 3673 (E.D.Pa. January 4, 1995). Therefore, it is clear that the court should apply the law of Pennsylvania to the plaintiffs' claim of legal malpractice.

*Statute of Limitations*

Under Pennsylvania law, there is a two year statute of limitations governing legal malpractice actions based in tort.[4] *See* 42 Pa.C.S.A. § 5524, *Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.,* No. 96–CV–4488, 1997 WL 102521 (E.D.Pa. February 28, 1997). Pennsylvania uses the "occurrence rule" to determine when the claim accrues, thereby triggering the statute of limitations. *Id.* at *3. This means that an action for malpractice accrues at the point an attorney breaches his or her professional duties. *See Harsco Corp. v. Kerkam, Stowell, Kondracki & Clarke,* 961 F.Supp. 104 (M.D.Pa.1997).

In order to bring a claim outside of the statute of limitations, a plaintiff faces the burden of demonstrating that their claim falls into one of the exceptions to the occurrence rule. One of these exceptions is the "equitable discovery rule" which tolls the statute of limitations where the plaintiff cannot, "despite the exercise of due diligence" know of his injury or its cause. *Saferstein,* 1997 WL 102521 at *3. The claim accrues at the point where the plaintiff knows he's been injured and that the injury has been caused by another's conduct. *See Urland v. Merrell–Dow Pharm., Inc.,* 822 F.2d 1268,1271 (3d Cir. 1987). However, lack of knowledge, a mistake, or a misunderstanding will not toll the statute, rather the plaintiff must show

that the plaintiff could not have, despite its diligence, have known of the claim. *See Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 468 A.2d 468 (1983).

The plaintiffs bear the burden of demonstrating their "inability to know of the injury despite the exercise of reasonable diligence." *Sterling v. Stack & Gallagher, P.C.,* No. 97–CV–0297, 1998 WL· 84006 (E.D.Pa. February 26, 1998). The Third Circuit has defined reasonable diligence in noting, "[t]here are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful." *Urland,* 822 F.2d at 1273. Where the plaintiff has no reason to investigate, the statute will be tolled. *See Sterling,* 1998 WL 84006 at *4. However, if there is something to trigger the inquiry, then the plaintiff must demonstrate that he conducted an investigation, and despite doing so, did not discover his injury.

The instant case presents two separate issues of material fact which preclude the entry of summary judgment based on statute of limitations grounds. First, there is a genuine issue of material fact as to whether the plaintiffs exercised the appropriate and legally required diligence. Second, assuming that the plaintiffs did exercise the required diligence, tolling his claim for a period of time, there is a·genuine issue of material fact concerning the date he actually learned of his claim. "Whether the statute has run on a claim is usually a question of law for the trial judge, but where the issue involves a factual determination, the determination is for the jury." *Hayward v. Med. Ctr. of Beaver County,* 530 Pa. 320, 608 A.2d 1040,

---

**4.** Legal malpractice actions may also be based on contract, but the plaintiff must point to the breach of a particular contractual provision. In the instant case the parties never entered into any sort of signed retainer or contingency agreement and therefore all claims are based in tort.

1043 (1992); *see also Caleb v. CRST, Inc.,* No. 01–CV–351, 2001 WL 438420, *4 (E.D.Pa. April 30, 2001); *Levocz v. Fanelly,* No. 92–CV–3551, 1993 WL 175236, *2 (E.D.Pa. May 14, 1993).

The parties do not dispute that the relevant breach of duty occurred on May 11, 1998, when Dugan withdrew the praecipe, allegedly without first obtaining Foulke's consent.[5] The defendants argue that the statute of limitations on Foulke's malpractice claim against Dugan began to run on that date. Because there was nothing actually barring the plaintiffs from discovering their claims, and their own "lack of knowledge" provides no excuse for the failure to understand the implications of Dugan's actions, the discovery rule does not apply. Plaintiffs, however, contend that they are entitled to the tolling of the statute under the discovery rule because nothing triggered their obligation to investigate.

In January 1998, Attorney Berman had written to Foulke, advising him he would not pursue the case and that he needed to act quickly in order to preserve the action. Subsequently, Foulke met with Dugan who filed a praecipe and writ within the statutory period in the underlying action thereby barring any contention of violation of the statute. When Foulke received a letter from Dugan in March, Foulke could have reasonably concluded that this letter meant only that Dugan would no longer represent him in the preserved action. The Berman letter had been so explicit about the meaning of his withdrawal, that Foulke might reasonably have concluded that the letter from Dugan meant no more than what it said on its face—that Dugan's firm was closing their file on the case. Because Dugan had filed the appropriate papers to prevent the expiration of the statute of limitations, without further instruction, Foulke could have reasonably believed he was under no deadline to seek alternate legal counsel to pursue, what he still believed to be, his pending action.

"[O]nly where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." *Hayward,* 608 A.2d at 1043. Here, based on the evidence presented in the record, it is possible that reasonable minds could differ as to whether Foulke had the necessary clues that set off his obligation to investigate the implications of Dugan's withdrawal. Because material issues of fact remain outstanding concerning the Foulkes' knowledge of their position and whether it would have been reasonable for them to inquire about the alleged breach, summary judgment cannot be granted on these grounds. *See Sterling v. Stack & Gallagher, P.C.,* No. 97–CV–0297, 1998 WL 84006, *4 (E.D.Pa. February 26, 1998).

Defendants also argue for summary judgment based upon their assertion that the plaintiffs received the requisite notice to trigger the commencement of the running of the statute on the malpractice action no later than August 31, 1998. The

---

**5.** Because the defendants have moved for summary judgment, all facts have been considered in the light most favorable to the plaintiffs. The defendants contend that no malpractice occurred because Dugan, or a representative of his office, informed Foulke of his intention to withdraw the praecipe and obtained his consent prior to doing so. Defs.' Mot. for Summ. J., 11 (defendants cite to Ex. L, a copy of Dugan's time entry, but that exhibit has been omitted from the motion). Foulke has no recollection of ever being told that Dugan planned to withdraw the writ, only that he was closing his file. Dep. of George Foulke, 212–13. Therefore for the purpose of adjudicating the defendants' motion for summary judgment, I have assumed Dugan did not tell Foulke he was withdrawing the writ and that this constitutes legal malpractice.

instant action was not filed until September 1, 2000, one day beyond the two year period. Dugan's contention that the statute began to run on August 31, 1998 is based upon a telephone conversation between Attorney Dooley and Foulke. On that day, Dooley contacted Foulke to inform him that he could not pursue any action against the Budd Company and that he "had a problem." Dep. of George Foulke, 54. In a letter dated September 1, 1998, Dooley confirmed the phone conversation of the previous day and indicated that the case had "already been settled, discontinued, and ended as of May 11, 1998," and enclosed a copy of the order entered in the state court action. Letter of September 1, 1998 from Attorney John T. Dooley to George Foulke. As soon as the plaintiffs had notice that the case had been settled, discontinued, and ended, they had the requisite notice to end any tolling and commence the running of the limitations period. Plaintiffs disagree with this characterization and argue that the limitations period did not start to run until later in September 1998, when Foulke discussed the matter with Attorney Dooley at his office.

It is not clear from the record that the plaintiffs received notice of the specific disposition during the phone conversation on August 31. Foulke recalled being told only that he "had a problem," and not that the case had been settled. Dep. of George Foulke, 54. While Attorney Dooley indicated that the letter was, to the best of his knowledge, accurate, he had no independent recollection of the phone conversation with Foulke. *See* Defs.' Resp. to Pls.' Opp'n, 7.[6] Considering these facts in the light most favorable to the plaintiffs, it

cannot be determined as a matter of law that the limitations period was triggered by the phone call of August 31, 1998. Based on the evidence before me, it could reasonably be determined that Foulke's receipt of the September 1, 1998 letter triggered the statute of limitations. Since his receipt of the letter dated September 1, 1998 could not have been received prior to that date, the plaintiffs' claims would not be barred by the statute of limitations. There is a disputed issue of material fact concerning the precise date the statute was triggered so therefore I will deny the motion for summary judgment.

**AND NOW,** this day of February 2002, it is **ORDERED** that the defendants' motion for summary judgment (docket entry # 9) is **DENIED.**

---

**6.** The defendants cite to Dooley's deposition at page 16, attached as Ex. A to the motion. However, that dialogue excerpted from the deposition cannot be found on the included

page. I have assumed it is an accurate quotation as others included in the various briefs have been.