PRECEDENTIAL

UNITED STATE COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1589
_____

NICHOLAS KNOPICK,

Appellant

v.

JOHN J. CONNELLY, JR.; SUSAN M. KADEL;
JAMES, SMITH, DURKIN & CONNELLY, L.L.P.;
PHILIP A. DOWNEY
_____

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA
_____

(D.C. Civ. Action No. 1:09-cv-01287)
District Judge: Honorable Sylvia H. Rambo
_____

Argued on December 15, 2010
_____

Before: SLOVITER, GREENAWAY, JR., and
GREENBERG, Circuit Judges

(Opinion Filed:  April 13, 2011)

_____

Dennis E. Boyle (argued)
Joshua M. Autry

Boyle, Neblett & Wenger
4660 Trindle Road, Suite 200
Camp Hill, PA 17011
        *Counsel for Appellant*

Philip A. Downey (argued)
Downey Law Firm
P.O. Box 1021
Unionville, PA 19375
        *Counsel for Appellee Downey*

Edwin A.D. Schwartz
Marshall, Dennehey, Warner, Coleman & Goggin
4200 Crums Mill Road, Suite B
Harrisburg, PA 17112
        *Counsel for Appellees Connelly, Jr.; Kadel;
        and James, Smith, Durkin & Connelly, L.L.P.*

_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

Nicholas Knopick ("Knopick") appeals the District Court of the Middle District of Pennsylvania's grant of summary judgment for Appellee Philip Downey ("Downey"), Esquire, on Knopick's legal malpractice tort and contract claims against Downey. Knopick claims that Downey committed malpractice in failing to prosecute a legal malpractice action on Knopick's behalf against John Connelly, Jr., Esquire, Susan M. Kadel, Esquire, and their law firm James, Smith, Durkin & Connelly, L.L.P. ("Connelly Defendants").

Knopick argues that the District Court should not have applied the occurrence rule to determine the start date of the statute of limitations for his claim against the Connelly Defendants; instead, the Court should have tolled the statute of limitations based on the discovery rule or fraudulent

2

concealment doctrine. Knopick also argues that even applying the occurrence rule, the District Court erred in its ruling because he and Downey had entered into an attorney-client relationship before the statute of limitations had run.

We find that the District Court erred in granting summary judgment in favor of Downey based on its application of the occurrence rule to Knopick's underlying claim against the Connelly Defendants. We will apply the discovery rule to Knopick's underlying claim and we subsequently find a genuine issue of fact as to when Knopick should have known of his injury and its cause under the discovery rule. We will reverse the decision of the District Court and remand Knopick's case for further proceedings, in accordance with this opinion.

## I. **BACKGROUND**[1]

On May 11, 1998, Knopick, a commercial pilot, and his wife, Darlene Knopick ("Dolly"), entered into a Separation and Property Settlement Agreement ("PSA" or the "Agreement") whereby Dolly would receive $60,000 from Knopick's retirement plan. In July 1999, Knopick filed for divorce. Dolly filed a motion to set aside the Agreement and to hold an equitable distribution hearing for the property. In the motion, she alleged that Knopick failed to disclose all of his stock investments at the time they entered into the Agreement. Specifically, she was unaware of two million dollars worth of stock that Knopick held. Knopick maintained that at the time of the Agreement, Dolly was fully aware of all of his assets, including the two million dollars worth of stock. In any case, the stock was encumbered by a two million dollar loan.

---

[1] We draw these facts from the record, viewing them in light most favorable to Knopick. See Vitalo v. Cabot Corp., 399 F.3d 536, 542 (3d Cir. 2005).

Knopick retained the Connelly Defendants in 2004 to represent him in the matter. The Connelly Defendants told Knopick that the Agreement was valid, and that if it were set aside, he would only have to pay Dolly the amount that the stock was worth at the time he entered into the Agreement. On August 2, 2004, a PSA hearing was held before Judge Kathy A. Morrow in the Court of Common Pleas in Perry County, Pennsylvania, to determine whether Dolly was provided with full disclosure of Knopick's assets in 1998.

Before the hearing, Knopick told Connelly of four witnesses who could testify as to Dolly's knowledge of his assets at the time he entered into the PSA. The witnesses on the list were Dolly's lawyer, Carl Wass; Knopick's lawyer, Michael Hanft; the couple's accountant, Charles ("Chuck") Pegg; and his wife, Becky Pegg. Knopick claims that Connelly represented that he would contact the witnesses on the list, including Wall, Chuck Pegg, and Hanft. Prior to the PSA hearing, Dolly offered to settle the case, if Knopick would transfer $300,000 of his UPS stock to her. Based on advice from Connelly and Kadel, including Kadel's indication that they had a lot of evidence including tax returns, Knopick rejected the offer.

Neither Kadel nor Connelly met with Knopick prior to the hearing. On August 2, 2004, the date of the hearing, Knopick was informed that Kadel, not Connelly—whom he had expected to appear on his behalf—would represent him at the hearing. Kadel did not call any of the witnesses that Knopick had recommended. Kadel told Knopick that Connelly did not need to be there, that the other witnesses were not necessary because of the tax records, and that the Agreement would not be set aside.

In fact, only Knopick testified on his own behalf. Knopick denied committing any fraud or concealing his assets. He testified that Dolly was aware of the value of his stock and that she had access to all of his financial statements. He further stated that Dolly had access to his financial information each year when they prepared their joint tax returns with their accountant, Mr. Pegg.

4

Dolly and her sister, Carol Ann Chaft, testified on Dolly's behalf. Dolly testified that Knopick had acted fraudulently and had failed to disclose his assets. Dolly claimed that she thought Knopick only had a small amount of stocks and that she did not know their value. Dolly asserted that Knopick and Pegg did not share Knopick's financial information with her when they did the couple's taxes. She also testified that, at the time, she believed Mr. Hanft to be their family attorney. She professed that she never consulted with Wass about Knopick's assets before signing the Agreement.

After the hearing, Kadel told Knopick that it had gone well. Connelly told Knopick later that the hearing "was not a big deal and that any competent attorney could handle it." (App. at 476.) Over the next few months when Knopick spoke to Connelly and Kadel, they told him that there was nothing to worry about, and assured him that the hearing had gone well. On July 7, 2005,[2] the Court decided the matter in Dolly's favor, setting aside the Agreement in order to subject Knopick's assets to an equitable distribution hearing. Knopick claims that at that point, Kadel and Connelly told him that an appeal was in the works.[3] Shortly thereafter, Knopick discharged the Connelly Defendants because of how Connelly had handled the custody aspect of the case. At that point, Knopick hired attorney Rich Wagner to represent him, and claims that only after Wagner reviewed the case did he come to believe that Connelly and Kadel may have been negligent.

---

[2] The state court order refers to the date as July 5, 2005, however in his brief, Knopick claims that the date of Judge Morrow's Order was July 7, 2005, when it was stamped and placed on the docket. Downey uses the same date of July 7, 2005 in his brief in response and at oral argument, although he used the date of July 5, 2005 in his original complaint. For the purposes of this appeal and because it does not affect our decision, we will refer to the date of the order as July 7, 2005.

[3] Knopick settled the matter in early 2007 by agreeing to pay Dolly $1,800,000.

5

On July 28, 2006,[4] Knopick first met with Mr. Downey, who had been recommended to him, to discuss bringing a malpractice action against the Connelly Defendants for their representation of him in the PSA matter.[5] On August 9, 2006, at Downey's direction, Downey and Knopick met with attorney Albert Momjian, whom Downey identified as an expert in domestic relations cases. After their meeting, Downey met with Knopick several times and told Knopick that he had a good malpractice case. Downey also told Knopick that he had retained an expert and was filing suit on Knopick's behalf.

On October 26, 2006, Downey sent a letter to the Connelly Defendants stating, in part, the following:

> Having reviewed the hearing transcript, it does appear that your firm was negligent in failing to present both testimonial and documentary evidence, and for repeatedly failing to object to improper testimony by Darlene Knopick and questioning by her attorney.
>
> The evidence and objections in question, were of sufficient

---

[4] Downey claims that this meeting took place on July 30, 2006. Because the two-day discrepancy is of no moment in our decision, we need not resolve it.

[5] On appeal, Knopick claims that even if the occurrence rule applies, his attorney-client relationship with Downey for the Connelly Defendants malpractice matter started as early as the date of this first meeting, on July 28, 2006, before the expiration of the statute of limitations under the occurrence rule. Downey claims that by failing to raise it below, Knopick has waived this argument. Because we will reverse the District Court's ruling on other grounds, we do not reach this argument.

weight that they very likely would have resulted in a different outcome. . . . At this juncture we do not know Mr. Knopick's exact monetary loss as a result of your firm's apparent malpractice; however, it seems almost certain that it will exceed one million dollars ($1,000,000), and could well be in the vicinity of fifteen million dollars ($15,000,000).

Please place your carrier on notice of this potential claim. The statute of limitations on this matter, in tort, is July 5, 2007, [two years after the date of Judge Morrow's Order invalidating the Property Settlement Agreement].

(App. at 523.) On March 30, 2007, five months later, Downey asked Knopick to sign an official agreement to file suit on the malpractice claim, which Knopick did. However, Downey did not file the lawsuit.

On February 25, 2008, Downey sent Knopick a letter terminating his representation. Knopick claims that until this time, Downey repeatedly told him that he had a good case. The letter stated that the two-year statute of limitations on his claim against the Connelly Defendants had begun to run from the date of the August 2, 2004 hearing when the firm failed to call potentially relevant witnesses, and had expired on August 2, 2006, prior to Downey's representation of Knopick.[6]

---

[6] Although it is somewhat unclear from the record and oral argument what transpired during the time between the signing of the representation agreement and Downey's termination letter, it is clear from the October 2006 letter that Downey believed, or at least represented, at one time, that the statute of limitations did not begin to run until the court's July order, and that he intended at that time, to bring the action in tort.

On July 6, 2009, Knopick filed suit against the Connelly Defendants, claiming legal malpractice under a breach of contract theory. In that complaint, Knopick also brought claims against Downey, alleging legal malpractice under both tort and contract theories of liability. On July 22, 2009, the Connelly Defendants moved to dismiss Knopick's claim against them. On December 29, 2009, the District Court granted this motion. It found that Knopick's claim against the Connelly Defendants was grounded in tort, not contract. The tort claim was thus subject to a two-year statute of limitations which had run, with regard to Knopick's claims against them, regardless of the start date of the statute of limitations, an issue which the Court explicitly did not decide. Knopick v. Connelly, Civil No. 09-1287, 2009 WL 5214975, at *1 (M.D. Pa. Dec. 29, 2009). Knopick did not file a timely appeal of that ruling.

On October 21, 2009, Downey filed a motion for summary judgment on Knopick's claims against him. The District Court granted the motion on January 25, 2010. In his motion, Downey argued that Knopick's claims must fail because Downey and the Connelly Defendants did not cause Knopick to suffer economic damages and because the PSA was the product of Knopick's own fraud. In a footnote, Downey noted that if Knopick's claims survived summary judgment, a critical factor in determining his tort claim would be when the applicable statute of limitations began to run—at the August 2004 hearing or at the time of Knopick's notice of the state court's July 2005 order. Knopick addressed the statute of limitations argument in his brief in response, claiming that the statute did not commence until the court's order, and that Downey, whom he retained in March 2007, was therefore retained within the two-year tort statute of limitations.

---

Thus, Downey's assertion at oral argument before this Court that he believed the potential claim against the Connelly Defendants was based in contract and that the statute of limitations on that claim started at the August 2, 2004 hearing is not credible.

8

The District Court granted Downey's motion for summary judgment on Knopick's tort claim on the statute of limitations ground,[7] finding that the occurrence rule applied to start the statute on the date of hearing (August 2, 2004). The Court also found that although the parties made numerous potentially meritorious arguments, the statute of limitations on Knopick's claims had run by the time he retained Downey for the malpractice claim. This was devastating to Knopick's claim that Downey committed malpractice by not filing a claim against the Connelly Defendants. In so finding, the Court determined that Pennsylvania's discovery rule did not toll the start of the statute of limitations. The Court also granted summary judgment on Knopick's contract claim for legal malpractice against Downey, finding that the claim was actually grounded in tort. [8] The District Court did not reach Downey's other arguments for summary judgment because of its dispositive statute of limitations determination. Knopick appeals the District Court's order.

---

[7] A tort claim for legal malpractice in Pennsylvania requires the following:

> (1) the employment of the attorney or other basis for a duty; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of damage to the plaintiff.

Bailey v. Tucker, 621 A.2d 108, 112 (Pa. 1993). Because the Court found that the statute of limitations for Knopick's claim against the Connelly Defendants had already run when Knopick retained Downey, it found that Knopick could not have met part two of a tort claim because Downey acted as a reasonable attorney would have under the circumstances in not bringing an expired claim.

[8] Knopick acknowledged at oral argument that he has abandoned his contract claim.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1332, due to diversity of citizenship of the parties. We have jurisdiction over this appeal, pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a district court's grant of summary judgment and apply the same standard of whether genuine issues as to material fact exist such that a reasonable jury could return a verdict for the plaintiff. Fed. R. Civ. P. 56(a). Debiec v. Cabot Corp., 352 F.3d 117, 128 (3d Cir. 2003). We must "view the record and draw inferences in a light most favorable to the non-moving party." In re IKON Office Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002).

## III. ANALYSIS

State tolling principles "are generally to be used by a federal court when it is applying a state limitations period;" therefore, we look to Pennsylvania law, predicting how the Pennsylvania Supreme Court would resolve the statute of limitations issue. Debiec, 352 F.3d at 128 (internal quotation marks and citation omitted); Jewelcor, Inc. v. Karfunkel, 517 F.3d 672, 676 n.4 (3d Cir. 2008). "When ascertaining Pennsylvania law, the decisions of the Pennsylvania Supreme Court are the authoritative source." Spence v. ESAB Group, Inc., 623 F.3d 212, 216 (3d Cir. 2010). When making a prediction as to how the Pennsylvania Supreme Court would rule, we "must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," among other sources. Id. (internal quotation marks omitted) (quoting Norfolk S. Ry. Co. v. Basell USA Inc., 512 F.3d 86, 92 (3d Cir. 2008)).

Pennsylvania imposes a two-year statute of limitations on tortious conduct, including legal malpractice actions. 42 Pa. C.S.A. § 5524. Pennsylvania favors strict application of statutes of limitations. Glenbrook Leasing Co. v. Beausang, 839 A.2d 437, 441 (Pa. Super. Ct. 2003), *appeal granted in part*, 870 A.2d 318 (Pa. 2005) *and order aff'd without*

*opinion*, 881 A.2d 1266 (Pa. 2005). "Whether the statute has run on a claim is usually a question of law for the trial judge, but where the issue involves a factual determination, the determination is for the jury." Foulke v. Dugan, 187 F. Supp. 2d 253, 258-59 (E.D. Pa. 2002) (quoting Hayward v. Med. Ctr. of Beaver Cnty., 608 A.2d 1040 (Pa. 1992)).

The trigger for the accrual of a legal malpractice action is not the realization of actual loss, but the occurrence of a breach of duty. Wachovia Bank, M.A. v. Ferretti, 935 A.2d 565, 572 (Pa. Super. Ct. 2007). Under the occurrence rule, "the statutory period commences upon the happening of the alleged breach of duty." Id. at 572 (quoting Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger, 674 A.2d 244, 246-47 (Pa. Super. Ct. 1996)). Where a plaintiff could not reasonably have discovered his injury or its cause, however, Pennsylvania courts have applied the discovery rule to toll the statute of limitations. Wachovia, 935 A.2d at 572-74 (citing Pocono Int'l Raceway v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983)). Where the discovery rule does apply, the two-year period on legal malpractice actions begins to run where the plaintiff knew or in the exercise of reasonable diligence should have known of the injury and its cause. Crouse v. Cyclops Indus., 745 A.2d 606, 611 (Pa. 2000).

Knopick argues that instead of the occurrence rule, the Court should have applied the discovery rule in deciding the statute of limitations issue on his claim against the Connelly Defendants. Alternatively, Knopick argues that the Connelly Defendants would have been equitably estopped from asserting a statute of limitations defense based on the doctrine of fraudulent concealment.[9] Fraudulent concealment would

---

[9] Unlike Downey's assertion at oral argument, Pennsylvania common law does not hold that an exception to application of the occurrence rule requires fraud or concealment. Though fraud or concealment may be a factor in determining whether the discovery rule applies, they are not necessary to its application. To the extent that Downey alludes to the separate doctrine of fraudulent concealment, which may also

also toll the start of the statute of limitations on Knopick's malpractice claim until he reasonably should have been aware of his injury and its cause.[10]  See Fine, 870 A.2d at 861.

The discovery rule is historically "grounded on considerations of basic fairness." Taylor v. Tukanowicz, 435 A.2d 181, 183 (Pa. Super. Ct. 1981) (citing Ayers v. Morgan, 154 A.2d 788 (Pa. 1959)).  It was first enunciated by the Pennsylvania Supreme Court in a coal conversion action where the subsurface injury, defendant's removal of coal from plaintiff's property, was unknown to the plaintiff.  The analysis focused on "the inability of the plaintiff, despite the exercise of diligence, to know of the trespass." Pocono, 468 A.2d at 471.  This tolled the running of the statute, for "no amount of vigilance w[ould] enable him to detect the approach of a trespasser who may be working his way through the coal seams underlying adjoining lands." Id. (internal quotation marks omitted) (quoting Lewey v. H.C. Fricke Coke Co., 31 A. 261, 263-64 (Pa. 1895)) ("He cannot reasonably be required to act until knowledge that action is needed is possible to him. We are disposed to hold, therefore, that the statute runs against an injury committed in or to a

be used to toll the statute of limitations, it requires the presence of clear or unequivocal evidence of "unintentional or intentional" fraud or concealment.  See Fine v. Checcio, 870 A.2d 850, 860 (Pa. 2005).

[10] Plaintiffs often raise these two doctrines as alternative grounds for tolling.  Indeed, we have described the Pennsylvania courts' development of the doctrine of fraudulent concealment "[a]s a corollary to the discovery rule." Bohus v. Beloff, 950 F.2d 919, 925-26 (3d Cir. 1991) (finding that the inquiry under the fraudulent concealment doctrine is the same as that under the discovery rule).  As the Pennsylvania Supreme Court stated in Fine, "the standard of reasonable diligence, which is applied to the running of the statute of limitations when tolled under the discovery rule, should also apply when tolling takes place under the doctrine of fraudulent concealment." 870 A.2d at 861.

12

lower stratum from the time of actual discovery, or the time when discovery was reasonably possible.").

Subsequently, the rule was principally applied in medical malpractice cases, notably one that involved the failure of a surgeon to remove a sponge after surgery. Ayers, 154 A.2d at 788 (citing Lewey, 31 A. at 261). The discovery rule was implicated based on the inability of the plaintiff to ascertain the presence of the sponge. This "prevent[ed] the commencement of the running of the statute, for '[c]ertainly he could not open his abdomen like a door and look in; certainly he would need to have medical advice and counsel.'" Pocono, 468 A.2d at 472 (quoting Ayers, 154 A.2d at 792). In Ayers, the Pennsylvania Supreme Court reversed the lower court's summary judgment order starting the statute of limitations at the time of surgery when the sponge was left in plaintiff's abdomen.

Pennsylvania courts have since applied the discovery rule to other types of actions under the same principle. See Anthony v. Koppers Co., Inc., 425 A.2d 428, 436 (Pa. Super. Ct. 1980), *rev'd on other grounds*, 436 A.2d 181 (Pa. 1981).

We also look to our Circuit's pronouncements regarding Pennsylvania's discovery rule in the context of medical malpractice and physical tort claims. We have found that the rule is "designed to 'ameliorate the sometimes-harsh effects of the statute of limitations,' and it is often applied in medical malpractice and latent disease cases in which the plaintiff is unable to discover his or her injury until several years after the tort occurred." Mest v. Cabot Corp., 449 F.3d 502, 510 (3d Cir. 2006) (finding material issue of fact as to whether plaintiffs exercised reasonable diligence in determining cause of their cows' illness where plaintiffs relied on experts' advice and defendant's representation that its emissions from industrial facility were harmless) (citing Cathcart v. Keene Indus. Insulation, 471 A.2d 493, 500 (Pa. Super. Ct. 1984)); see also Bohus, 950 F.2d at 919 (finding either discovery rule or fraudulent concealment tolled limitations period and evidence supported jury's conclusion that patient could not have discovered the cause of her injuries subsequent to bunion surgery until she consulted an

13

orthopedic surgeon where original doctor assured her that the pain was result of normal healing process and plaintiff consulted other physicians who confirmed prognosis).[11]

The common thread in the discovery rule's application in medical malpractice cases is that a plaintiff suffers a physical ailment after undergoing treatment from a doctor, but is unaware of the subsequent injury at the time of the later-alleged breach of duty.  Specifically, the symptoms have not yet become apparent or the symptoms experienced up until that time are presumed to be normal.  Until the plaintiff experiences abnormal symptoms, or the abnormal condition

---

[11] See also Miller v. Philadelphia Geriatric Ctr., 463 F.3d 266 (3d Cir. 2006) (applying discovery rule in Pennsylvania survival and wrongful death claim where question remained whether decedent with mental age of a four-year old knew or was capable of knowing that he was injured and the cause of his injury); Vitalo v. Cabot Corp., 399 F.3d 536 (3d Cir. 2005) (noting that where a person is given an incorrect diagnosis and may be misdirected to injury's cause, statute of limitations might not begin until they are given the correct diagnosis or should otherwise know the true cause in light of totality of the circumstances); O'Brien v. Eli Lilly & Co., 668 F.2d 704 (3d Cir. 1981) (finding under the discovery rule that if plaintiff had exercised due diligence, she could have discovered the operative cause of her injury when she read a magazine article describing a woman with a cancer similar to her own whose mother took certain hormones during pregnancy and her doctor told her that the two were possibly related).

In O'Brien v. Eli Lilly, consistent with the principle articulated in other medical malpractice cases, we found that the plaintiff failed to present sufficient evidence to permit a jury to find that she could not reasonably have possessed the salient facts concerning the occurrence of her injury and who or what caused it since she was able to do so upon inquiring with her mother and her doctor two years later.

14

manifests itself, a plaintiff shall, under the rule, not be held responsible for knowing of the injury and/or its cause, thus triggering the statute of limitations.

These principles are similarly applicable in the context of legal malpractice actions. Both Pennsylvania courts and federal courts within this Circuit have recognized the discovery rule's application in legal malpractice matters. In particular, the discovery rule has been applied in legal malpractice cases when the injured party is unable, despite the exercise of due diligence,[12] to know of his injury or its cause. See Bohus, 950 F.2d at 924. These courts have applied the discovery rule where requiring a plaintiff's knowledge of his injury would otherwise be unreasonable. The effect is that the discovery rule tolls the running of the statute of limitations until a plaintiff is put in a position to discover the injury and its cause, either through inquiry or retention of a new lawyer. Knowledge may also be imputed to plaintiffs when an adverse action is taken against them, be it through a court order or through a third party action, thus initiating the running of the statute of limitations at that time.

Since this is a matter of state law, we look to Pennsylvania state courts initially. The Pennsylvania Supreme Court has acknowledged the occurrence rule in deciding when the statute of limitations should begin to run in the criminal defense context of a plaintiff's claim of legal malpractice, but to our knowledge, has not yet analyzed the discovery rule's application to legal malpractice in a civil suit. See Bailey v. Tucker, 621 A.2d 108, 115 (Pa. 1993) ("with regard to the respective statutes of limitations, the rule in this Commonwealth is that the statutory period commences at the time the harm is suffered or, if appropriate, at the time the alleged malpractice is discovered") (citing Pocono, 468

---

[12] The terms "due diligence" and "reasonable diligence" are used by Pennsylvania courts in describing the requisite level of investigation necessary to prompt the start of the statute of limitations under the discovery rule. Because neither term is material to our finding, we use the terms interchangeably.

A.2d at 471).[13]  However, one of Pennsylvania's intermediate appellate courts, the Pennsylvania Superior Court, has analyzed the discovery rule in non-criminal legal malpractice contexts.  These rulings, along with the Pennsylvania Supreme Court's application in the medical malpractice context, are instructive in this context.  Spence, 623 F.3d at 216.

In Wachovia, the Pennsylvania Superior Court found that under the occurrence rule, plaintiff's legal malpractice and breach of contract causes of action against its attorney would have accrued at the time the attorney allegedly breached a duty owed when she failed to mark a judgment in a legal filing as "satisfied."  935 A.2d at 574.  However, viewing the facts in the light most favorable to plaintiff, the court assumed that plaintiff, despite the exercise of due diligence, could not have reasonably been aware of this alleged breach until a third party initiated proceedings against the plaintiff for damages.  The statute of limitations was therefore tolled from the time of the failure to mark the judgment until the third party's lawsuit against Wachovia two

---

[13] In Bailey, a consolidated appeal where plaintiffs brought malpractice actions against their trial attorneys after their direct appeals and other post-conviction efforts for relief were resolved, the court determined that the statute of limitations against a criminal defense attorney would not be tolled until the resolution of a plaintiff's appeal.  Id. at 116.

Acknowledging that "the date a defendant becomes aware that his counsel may have been responsible for the harm will likely be harder to pinpoint," the court decided that "[n]onetheless, it is necessary to establish a point from which the statute of limitations period will commence," which it determined to be the end of the attorney-client relationship, since the aggrieved defendant would then  be "aware of the injury (i.e., the conviction), and . . . on clear notice to investigate any alternate cause of that harm which he believes to exist."  Id.  In that regard, the court found "the defendant is not unlike the medical patient who becomes aware of an injury and is then placed on notice to discover its cause."  Id.

years later, in which the damages regarding the failure to mark were asserted. Plaintiff's delay in filing its malpractice claim until final resolution of the third party lawsuit nine years later was not excused by the discovery rule, because the plaintiff was reasonably aware of the malpractice when the third party claim was first filed.

In Beausang, 839 A.2d at 437, the Pennsylvania Superior Court affirmed the trial court's application of the discovery rule in delaying the start of the statute of limitations in a legal malpractice action. The case involved a leasing company that retained defendant Butera, Beausang, Cohen & Brennan ("BBCB"), a law firm, to prepare an agreement of sale and deed in connection with plaintiff's purchase of office space from a condominium association. The agreement of sale included language that parking spaces would be included in the sale, but the deed contained no such language. Six years after the sale, a dispute arose between the plaintiff and the condominium association regarding the use of the parking spaces due to the lack of title transfer of the spaces. The condominium association sent a letter to defendant BBCB accusing it of malpractice, a copy of which was sent to the plaintiff.

At that time, plaintiff Glenbrook sought a second opinion from another firm which advised that Glenbrook may have a malpractice claim against BBCB. Following a bench trial five years later in the action between Glenbrook and the condominium association, in which the court ruled in the condominium association's favor, Glenbrook filed suit against BBCB. Glenbrook claimed that the two-year statute of limitations for malpractice should be tolled until the resolution of the bench trial.

The superior court held that it would be unreasonable to expect the individuals that constituted the plaintiff, non-attorneys, to learn of the injury of the firm's deficiency in the deed or the operation of the real estate doctrine of merger at the time that the sale occurred and the deed was conveyed to the plaintiff. It made this finding notwithstanding the reference to the parking spaces in the agreement of sale. The court found that the plaintiff acquired knowledge of the

harm—and the statute of limitations began to run—when the condominium association sent Glenbrook the copy of the letter to BBCB accusing BBCB of legal malpractice and Glenbrook sought a second legal opinion which confirmed that Glenbrook had a possible legal action against BBCB.[14]

In Robbins, 674 A.2d 244, plaintiff medical corporation brought a legal malpractice action against its law firm, alleging negligence in its filing of an employee pension plan with the Internal Revenue Service ("IRS"). The Pennsylvania Superior Court found that the statute of limitations did not accrue at the time of filing, but rather when the IRS, seven years later, notified the corporation that deductions for the pension plan were disallowed.[15]

---

[14] See also Fiorentino v. Rapoport, 693 A.2d 208 (Pa. Super. Ct. 1997) (affirming trial judge's refusal to grant relief on statute of limitations grounds because reasonable minds could differ about when the injury subsequent to the deficient drafting of stock purchase agreement actually happened, as between the initial drafting of the agreement, the first time the parties requested a decrease in monthly installments pursuant to the agreement, and the complete default in payment; reversing trial court's grant of motion for compulsory nonsuit because material fact questions existed); Garcia v. Cmty. Legal Servs. Corp., 524 A.2d 980, 985 (Pa. Super. Ct. 1987) (the court found that as a layperson, the plaintiff "was reasonably unable to learn of her injury until the court notified her that her suit was dismissed.").

[15] See also ASTech Int'l, LLC v. Husick, 676 F. Supp. 2d 389 (E.D. Pa. 2009) (applying the discovery rule, the court found that plaintiffs should have known of their injury of lawyer's deficient patent filing and its cause no later than the date on which plaintiffs revoked defendant prior counsel's power of attorney and retained new counsel who had full access to information regarding status of both patent applications); Harsco Corp. v. Kerkam, Stowell, Kondracki & Clarke, P.C., 961 F. Supp. 104 (M.D. Pa. 1997) (tolling statute of limitations under the discovery rule until condominium association notified plaintiff of problem in deed, not time of

The nettlesome issue is how to differentiate between instances when application of the discovery rule is appropriate or not. Where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause," Fine, 870 A.2d at 858-59, a court should determine, as a matter of law, that the discovery rule does not apply. "'[T]he point of time at which the injured party should reasonably be aware that he or she has suffered an injury is generally an issue of fact to be determined by the jury. . . . Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitation period be determined as a matter of law." Coregis Ins. Co. v. Baratta & Fenerty, Ltd., 264 F.3d 302, 307 (3d Cir. 2001) (quoting Sadtler v. Jackson-Cross Co., 587 A.2d 727, 732 (Pa. Super. Ct. 1991)).

Reasonable diligence is an objective test, Kach v. Hose, 589 F.3d 626, 642 n.17 (3d Cir. 2009), but it is also "sufficiently flexible to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." Id. at 641 (quoting Miller, 463 F.3d at 276) (internal quotation marks omitted). "[I]n this context, reasonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." Fine, 870 A.2d at 858. Demonstrating the expected diligence requires a plaintiff to establish a display of "those qualities of attention, knowledge, intelligence, and judgment which society requires of its members for the protection of their own interests and the interests of others." Wilson v. El-Daief, 964 A.2d 354, 363 n.6 (Pa. 2009) (citation omitted). Although there are few facts which diligence cannot discover, there must be "some reason to awaken inquiry and direct diligence in the channel in which it would be successful." Urland v. Merrell-Dow Pharms., Inc., 822 F.2d 1268, 1271 (3d Cir. 1987) (quoting Deemer v.

_____

sale when drafted under occurrence rule).

Weaver, 187 A. 215, 216 (Pa. 1936)); see also Debiec, 352 F.3d 117.

Where the plaintiff has no reason to investigate, the statute will be tolled. Foulke, 187 F. Supp. 2d at 258 (citing Sterling v. Stack & Gallagher, P.C., No. 97-CV-0297, 1998 WL 84006, at *4 (E.D. Pa. Feb. 26, 1998)). However, if something exists to trigger the inquiry, then the plaintiff must demonstrate that he conducted an investigation, and despite doing so, did not discover his injury. Id.

Knopick argues that the statute of limitations for his malpractice action against the Connelly Defendants was tolled until, at the earliest, July 7, 2005, the date of the state court's order mandating relief to Dolly. He contends that he did not discover his injury until after this date. He believed everything had gone well at the hearing based on the Connelly Defendants' assurances, both immediately after the hearing and over the succeeding months. Knopick did not believe that his agreement would be set aside. Knopick argues that this state of affairs affected his ability to discover his injury and that, until the court's ruling,[16] he believed that the Connelly Defendants had handled the hearing appropriately and that he would win. Hence, he had no reason to engage in an inquiry or conduct further due diligence.

---

[16] In his brief, Knopick notes that he did not come to recognize that the Connelly Defendants had been negligent until he met with his new attorney. We recognize that under Pennsylvania law, plaintiffs need not know that a defendant's negligence is the cause for injury before the limitations period begins to run. All that is necessary is that they know that they have been injured and the cause of that injury. Harsco, 961 F. Supp. at 108 (citing Navin v. Byrne, 638 F. Supp. 263, 264-65 (M.D. Pa. 1986) (citing DeMartino v. Albert Einstein Med. Ctr., N. Dist., 460 A.2d 295, 299 (Pa. Super. Ct. 1983))). Here, it would appear that no mechanism or avenue of inquiry or due diligence existed for Knopick to know before the July 2005 order that he had been injured.

Knopick relies primarily on Fine, one of the Pennsylvania Supreme Court's most recent iterations of the discovery rule, which is a consolidated medical malpractice case that involved a plaintiff's inability to discover his injury through due diligence. In Fine, Defendant Dr. Checcio surgically extracted Fine's wisdom teeth. Fine experienced symptoms including pain, bleeding, infection, swelling, and numbness on both sides of his face, but considered these conditions to be normal, based on advice from Dr. Checcio. All symptoms except the numbness subsided. According to Fine, during his office visits with Dr. Checcio in the months that followed, Dr. Checcio repeatedly told Fine that it would take six months for the numbness to subside. Some numbness still continued on the left side of his lip and chin. When his symptoms continued a year after the surgery, Fine came to believe that the persistent numbness was abnormal.

Dr. Checcio moved for summary judgment based on the statute of limitations running from the time of the surgery, a motion the trial court denied without opinion. The jury returned a verdict for Mr. Fine. On appeal, Dr. Checcio argued that the trial court erred in denying her motion for summary judgment. The Pennsylvania Superior Court agreed and reversed the judgment for Fine. The Pennsylvania Supreme Court reversed the superior court, finding that the grant of summary judgment was improper. Responding to Dr. Checcio's argument that the discovery rule did not apply as a matter of law because Fine was aware of the surgery and knew that his face was numb immediately after, the court found that, whether Fine should have known through reasonable diligence that his numbness could have been a temporary physical consequence of (and thus caused by) the procedure or a manifestation of his injury remained disputed. Fine, 870 A.2d at 861. Thus, the supreme court concluded that issues of fact existed for resolution by the fact finder.[17]

---

[17] The Pennsylvania Supreme Court also found that the superior court erred in holding that the statute was not tolled on grounds of fraudulent concealment because the parties disputed what the doctor actually said to Fine, and found that

Knopick argues that, as in Fine, a jury should decide whether a reasonable and diligent person should have immediately known that the failure to call witnesses at a hearing, in this context, was normal. He claims that, as a lay person, he was unable to know and understand that he had suffered an injury prior to speaking with other counsel.[18] Knopick claims that he relaxed his vigilance, as did the plaintiff in Fine, who was similarly reassured by his doctor that his symptoms were normal.[19]

---

the jury should decide whether this amounted to fraudulent concealment.

[18] Downey emphasized at oral argument that Knopick, by virtue of his investments, was a sophisticated financial investor, and thus should have known of the alleged breach at the time of the hearing. This argument is without merit. The notion that a sophisticated investor is knowledgeable in all legal areas is not persuasive. Knopick has no legal training. He relied on the Connelly Defendants. There is no evidence in the record to conclude otherwise.

[19] We also find instructive this Court's ruling in In re Mushroom Transportation Co., Inc., 382 F.3d 325 (3d Cir. 2004) analyzing the Pennsylvania discovery rule, albeit in the context of a bankruptcy case. In In re Mushroom Transportation Co., Inc., plaintiff's retained legal counsel to the bankruptcy estate embezzled funds from the estate. The debtor, who did not have actual knowledge of the embezzlement while it was taking place, filed several claims against counsel and his law firm, among others, including breach of fiduciary duty, wrongful conversion, and negligence, on which the district court granted summary judgment for defendants because it found that the claims were barred by the applicable statutes of limitations and laches under Pennsylvania law.

On remand to the district court, we pointed to the Bankruptcy Code's encouragement that debtors-in-possession retain lawyers and noted that "the existence of a fiduciary relationship is relevant to a discovery rule analysis precisely

Downey insists that the statute of limitations began to run at the time of the PSA hearing on August 2, 2004, not when the court issued its July 7, 2005 order or sometime thereafter. He claims that Knopick was fully aware of his alleged injury at the hearing when the Connelly defendants did not call the witnesses he suggested to testify. He further claims in his brief in response, and at oral argument, that reliance on Pennsylvania medical malpractice cases is improper, because medical malpractice is treated differently than legal malpractice, but offers no meaningful support for that distinction.[20]

Although we recognize that cases of medical malpractice require a different kind of trigger for a lay person to recognize an injury or its cause, and an injury's nature and manifestation will differ, this does not preclude reference to, or reliance on, the application of the discovery rule, in that context, in evaluating claims of legal malpractice.

---

because it entails such a presumptive level of trust in the fiduciary by the principal that it may take a 'smoking gun' to excite searching inquiry on the principal's part into its fiduciary's behavior." Id. at 343 (recognizing that the existence of a fiduciary, lawyer-client relationship and fiduciary's abuse of that relationship by themselves did not preclude judgment as a matter of law, but that "the presence of a fiduciary relationship would be pertinent to the question of when a plaintiff's duty to investigate arose.") (internal quotation marks omitted) (quoting Gurfein v. Sovereign Grp., 826 F. Supp. 890, 919 n.31 (E.D. Pa. 1993)).

[20] Downey also claims that Fine is distinguishable because the statements made by the dentist to the plaintiff about his symptoms were in dispute, whereas here, the statements made by the Connelly Defendants are not. Although the court in Fine did take this issue under consideration in finding that the lower court prematurely granted summary judgment, the more salient point here is that it is for a jury to determine whether Knopick was reasonably diligent in light of the undisputed statements.

23

The District Court below relied in part upon three district court decisions in deciding when the statute of limitations began to run at the time of the PSA hearing and not when Judge Morrow issued her order. However, these cases did not address attorney assurances; instead they involved some adverse action or ruling made by the court against the plaintiff to trigger the plaintiff's awareness of injury and cause, or the alleged breach of duty (or the plaintiff's reaction to it) was obvious enough in nature to suggest that the plaintiff should have been aware of the complained-of injury and its cause.

In the first, a district court found that the statute of limitations for malpractice, based on the attorney's failure to obtain an expert witness, failure to depose witnesses, and failure to represent plaintiffs' interests by demanding an additional $10,000, began on the day the plaintiffs received written notice from the attorney that the court had denied their motion to enlarge discovery to permit opinions of the expert and that they sought $10,000 to cover anticipated expenses. Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodgers, P.C., No. Civ. A 96-4488, 1997 WL 102521, at *4 (E.D. Pa. Feb. 28, 1997), *aff'd without opinion*, 127 F.3d 1096 (3d Cir. 1997).

In that case, the court's denial of counsel's motion for discovery disallowing the expert, a ruling against the plaintiff, and defendants' request for an additional $10,000 were apparently construed by the court as being indicative of potential malpractice at the time. Although that case is not binding, we cannot find that the alleged conduct of malpractice in the instant case, as a matter of law, indicated injury or should have triggered investigation of injury to Knopick.

The District Court relied on another unpublished decision, Carlise v. Bartony, Hare and Edson, No. Civ. 04-25, 2006 WL 2226029, at *1 (W.D. Pa. Aug. 2, 2006), in which the court found that an attorney's withdrawal of two of plaintiff's claims during trial, and at a minimum the jury verdict, served as the start of the statute of limitations for plaintiff's claim of legal malpractice for: (1) his attorney's

24

failure to discover and introduce a deed solidifying his property rights; (2) withdrawal of the two claims; and (3) the low amount of damages verdict. Though the court did not include the entire factual background or discuss alleged attorney assurances, it concluded that the plaintiff was fully aware of each of these failures when they happened. The court discussed the discovery rule in finding that the plaintiff, at a minimum, was aware of the injuries and their cause as of the date the verdict was reached, though it did not save the late filing of his claim, more than five years after the jury verdict.

Finally, the District Court cited to Pettit v. Smith, 241 B.R. 847 (E.D. Pa. 1999). There, the plaintiff asserted that the statute of limitations for her legal malpractice claim should commence when her wages were first garnished by the IRS based on tax returns she signed two years earlier. She claimed that her attorneys failed to advise her that these were joint returns with her husband. Although the factual recitation was brief, the court rejected that argument because it found that the plaintiff's deposition testimony and brief made clear that she knew or should have known when she signed income the tax returns prepared by her attorneys that they were being filed on behalf of herself and her husband. Id. at 851. The court in Pettit also pointed to the plaintiff's conversation with an IRS agent at or around the same time and payment on the tax bill as evidence that she could have learned of her potential cause of action. Finally, Pettit does not discuss attorney assurances. The circumstances in the instant case do not support a grant of summary judgment against Knopick, as occurred in these three cases.

Despite the fact that the injury in Fine, as a medical one, is distinguishable, the supreme court's approach there relies on the same principles for consideration of the discovery rule and is thereby instructive. The act of malpractice Knopick now claims is the Connelly Defendants' failure to call witnesses at the hearing. The approach in Fine, suggests we must address Knopick's ability, exercising reasonable diligence, to know of his subsequent injury and its cause. See Fine, 870 A.2d at 861 (citing Pocono, 468 A.2d at

25

471). A close look at the facts is necessary to the determination of this appeal.

Of critical importance in this case is the distinction between the act constituting the alleged breach—the Connelly Defendants' failure to call witnesses, which would start the statute under the occurrence rule—and the injury that flowed from this failure, constructive knowledge of which would trigger the statute of limitations under the discovery rule. The District Court, in applying the occurrence rule, conflated this distinction to some degree when it stated that plaintiff knew or should have known of "the alleged malpractice," what it described as the Connelly Defendants' failure to call witnesses, as of the date of the hearing. (App. at 11.)

Although it is undisputed that Knopick knew the witnesses were not called, it remains in dispute, and a question which we believe a jury should decide, when Knopick knew that he was injured as a result of the witnesses not being called. In this case, we believe the District Court inappropriately equates the breach of duty (or "alleged malpractice" action) with the injury suffered from that breach.

Given the Pennsylvania courts' pronouncements of the discovery rule, as well as its application by federal courts within our Circuit, we cannot conclude as a matter of law that Knopick's injury, due to the failure to call witnesses, was readily ascertainable on the hearing date in light of his counsel's assurances that the witnesses were not necessary and that the hearing had gone well. As in many of these cases, Knopick's attorney (in the underlying legal dispute) took an action he now claims was a breach of duty, the negative impact of which was not necessarily known to him until a later date.

Beausang, Wachovia, and Robbins suggest that it would be inequitable to, in all cases, place the onus on a lay person to know that he has been injured by his counsel's decisions and start the running of the statute of limitations on his malpractice claim at that time. These Pennsylvania Superior Court decisions in the first instance, in addition to Fine and its progeny, support an application of the discovery

26

rule.    Although the discovery rule has evolved in its application, its purpose has remained the same.  A plaintiff, unable to know of his injury or its cause because nothing has yet put him on notice of such injury, should not be held responsible for investigating until something gives him reason to do so.[21]

It is undisputed that Knopick gave the Connelly Defendants a list of witnesses and discussed with counsel the topic of their proposed testimony, that Connelly represented that he would contact the witnesses, and that the issue to be decided at the hearing was whether Knopick had failed to make full and fair disclosure of his financial assets at the initial time of separation.  However, we find that reasonable minds could disagree in determining whether Knopick knew or should have known, through the exercise of reasonable diligence, of his alleged injury as early as August 2, 2004, the date of the hearing.  See Fine, 870 A.2d at 863 (citing Pocono, 468 A.2d at 471); see also Wilson, 964 A.2d at 363. Reasonable minds could disagree as to whether Knopick had the necessary clues that set off his obligation to investigate the implications of the Connelly Defendants' failure to call witnesses prior to the date of the court's July 7, 2005 order. Foulke, 187 F. Supp. 2d at 258.

---

[21] We also recognize that in many legal malpractice cases, a plaintiff will not, like Knopick, bear witness to, or have actual knowledge of, the act which he later alleges constitutes malpractice.  See, e.g., Robbins, 674 A.2d 244.   Here, although Knopick was present at the hearing when the witnesses were not called, we do not believe, viewing the facts in a light most favorable to Knopick, that witnessing this action, a seemingly strategic one made by his counsel, should have evoked or inspired knowledge imputed to Knopick, as a matter of law, that he was injured.

## IV. **CONCLUSION**

We conclude that the district court erred in finding, as a matter of law, that the limitations period in Knopick's claim was triggered as of the August 2, 2004 state court hearing. Applying the discovery rule, we find that a jury could disagree as to whether Knopick reasonably knew or should have known of his injury before the court entered its order against Knopick on July 5, 2005. We therefore find that the District Court erred in granting summary judgment in Downey's favor based on its application of the occurrence rule. We will reverse the District Court's grant of summary judgment for Mr. Downey, and remand the case for further proceedings consistent with this opinion.