**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 10-4595

NICHOLAS D. MACCARI; VICTORIA R. MACCARI,

Appellants

v.

BITUMINOUS CASUALTY CORPORATION

On Appeal from the United States District Court
for the District of Delaware
(D. C. No. 1-09-cv-00258)
District Judge:  Honorable Gregory M. Sleet

Argued on July 14, 2011

Before:  RENDELL, SMITH and ROTH, <u>Circuit Judges</u>

(Opinion filed:  October 11, 2011)

O P I N I O N

John S. Spadaro, Esquire  **(Argued)**
John Sheehan Spadaro, LLC
724 Yorklyn Road, Suite 375
Hockessin, DE   19707

Robert A. Penza, Esquire
Gordon, Fournaris & Mammarella
1925 Lovering Avenue
Wilmington, DE   19806

Counsel for Appellant

Michael A. Pope, Esquire **(Argued)**
John A. Litwinski, Esquire
McDermott, Will & Emery, LLP
227 West Monroe Street
Chicago, IL 60606

Susan W. Waesco, Esquire
Jay N. Moffit, Esquire
Morris, Nichols, Arsht & Tunnell, LLP
1201 N. Market Street
Wilmington, DE 19801

       Counsel for Appellee

Delaware Trial Lawyers Association
Christopher J. Curtain, Esquire
MacElree Harvey, Ltd.
5721 Kennett Pike
Centrevill, DE 19807

William W. Erhart, Esquire
1101 Centre Road, Suite 117
Wilmington, DE 19805

      Amicus Curiae for Appellant

**ROTH**, <u>Circuit Judge</u>:

## I. <u>Introduction</u>

Nicholas Maccari, joined in this action by his wife Victoria Maccari, appeals the entry of summary judgment for Bituminous Casualty Corporation on Maccari's bad faith breach of contract claim against Bituminous. Maccari contends that the District Court failed to construe the facts in the light most favorable to him and improperly considered inadmissible evidence. He also challenges privilege rulings made by the Magistrate Judge and adopted by the District Court. For the reasons that follow, we will affirm the judgment of the District Court.

2

## II. **Background**

### A. *The Accident and Insurance Claims[1]*

In March 1999, a van driven by Maccari and insured by Bituminous was hit by another car. The parties agree that the driver of the other car, Eman Zaki, was entirely at fault for the collision. The insurance policy for Maccari's van included personal injury protection (PIP) as well as underinsured motorist (UIM) coverage. The parties agree that the UIM coverage entitled Maccari to compensation, up to $1,000,000, for damages incurred in excess of Zaki's insurance coverage, which had a limit of $100,000.

In February 2004, Maccari advised Bituminous that he sought compensation pursuant to the UIM coverage. Maccari initially demanded $650,000 on this claim, largely on the basis of a medical report stating that he was suffering from chronic cervical pain and recurring migraine headaches that prevented him from performing his job as a painting contractor and estimator. Over the course of 2004 and 2005, Bituminous investigated Maccari's claim, the parties discussed its value, and Maccari increased his demand to $900,000 and requested an arbitration hearing. In March 2006, on the recommendation of his doctors, Maccari had a cervical fusion operation. Maccari's doctors reported that the surgery went well but that it would not be possible to determine its effects on his disability for six to twelve months.

---

[1] Because we write only for the parties, we briefly summarize the undisputed facts, drawing all inferences in favor of Maccari, the non-moving party. *See Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011).

During that period, Bituminous arranged for a second examination of Maccari by its medical expert and for another report from its private investigator. In May 2006, one of the company's claims examiners sent an email to her superiors providing an update on Maccari's claim. A printed copy of the email contains her handwritten tally of the various types of compensation sought by Maccari, which totals $534,000. This calculation conflicts with the text of the email itself, which observes that "[i]f we use their figures the projection is 419k but we do expect those to go down because of the results thus far of his surgery and his atty will be completing new reports," and recommends an indemnity reserve of "350-400k."

Claims evaluation sheets from this period do not indicate that Bituminous valued Maccari's claim at $534,000. Moreover, in a deposition, a Bituminous representative denied that the handwritten notes represented the company's internal valuation of Maccari's claim.

In December 2006, Bituminous's medical expert provided a report in which he stated his conclusion that Maccari could work a light-duty position. Additionally, Bituminous's private investigator surveilled and videotaped Maccari going to work and performing chores outside his home over the course of several days. Finally, Bituminous's vocational expert provided a report finding that Maccari was qualified for a number of light-duty positions with wages averaging about $30,000 per year and as high as $45,000 per year.

In January 2007, Maccari withdrew the $900,000 claim and instead demanded the policy limit of $1,000,000 plus pre-judgment interest of $600,000, arguing that

Bituminous had unreasonably delayed the handling of his claim. The parties agreed to arbitrate their dispute and a hearing was scheduled for January 26, 2007. The week before the arbitration hearing, Bituminous revised its internal estimate of Maccari's claim, assessing the value of the claim at $381,000. Shortly before the hearing, Bituminous offered Maccari first $500,000, and then $750,000, to settle his claim. Maccari rejected these offers and the parties proceeded to arbitration, which resulted in an award of $1,000,000 to Maccari but no award of pre-judgment interest.

**B.** *Litigation*

In February 2009, two years after prevailing in the UIM arbitration, Maccari sued Bituminous in Delaware Superior Court for bad faith breach of contract and breach of the implied duty of good faith and fair dealing, alleging that Bituminous had failed to promptly pay his UIM claims. Maccari subsequently clarified that the UIM arbitration award covered his actual damages and that his claim was limited to punitive damages. Bituminous removed the case to the District Court and the parties proceeded with discovery.

At the close of discovery, Bituminous moved for summary judgment. The District Court granted the motion, finding that, in light of the evidence Bituminous had gathered, it had a good faith reasonable basis for rejecting Maccari's settlement demands. *Maccari v. Bituminous Casualty Corp.*, No. 09-258, 2010 WL 4959946 *7-8 (Dec. 1, 2010). Specifically, the Court held that Bituminous's refusal to accept these demands was justified by "unresolved questions concerning the extent to which Maccari could work and the amount he could earn." *Id.* at *8. It also noted that Bituminous had prevailed in

5

a previous PIP arbitration. *Id.* at *1, *5, *8. Finally, the District Court found insufficient support for Maccari's punitive damages claim because there was no evidence that Bituminous's conduct was due to "willful, malicious or reckless indifference," rather than to simple negligence or inadvertence. *Id.* at *8.

### III. Discussion

We review *de novo* the grant of summary judgment and apply the same standard as the District Court: whether, viewing the evidence in the light most favorable to Maccari, genuine issues as to material fact exist such that a reasonable jury could return a verdict for him. *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011). We are not limited by the reasoning below and "may affirm . . . on grounds different from those relied on by the district court." *In re Mushroom Transp. Co.*, 382 F.3d 325, 344 (3d Cir. 2004). Under Delaware law, "a first-party claim against an insurer for bad faith denial or delay in claim payments sounds in contract and arises from the implied covenant of good faith and fair dealing." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 440 (Del. 2005). A breach of the duty of good faith occurs "[w]here an insurer fails to investigate or process a claim," "delays payment," or denies a claim and "the insured can show that the insurer's denial of benefits was 'clearly without any reasonable justification.'" *Id.* (quoting *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 264 (Del. 1995)).

In March 2006, Maccari underwent neck surgery. As reported by his doctors, the ultimate effect of this surgery on his disability would not be known for six to twelve months. It was therefore reasonable for Bituminous to wait at least six months, until September 2006, to assess Maccari's condition and re-evaluate his claim. Bituminous

6

took until December 2006 to obtain the requisite medical, vocational, and investigatory reports and until January 2007 to value his claim at $318,000. In our view, this period over which to obtain and assess these reports was reasonable, and Bituminous's valuation of Maccari's claim was reasonably justified by the reports. In February 2007, Bituminous offered Maccari first $500,000 and then $750,000 to resolve his claim. A delay of one month between Bituminous's valuation of Maccari's claim and its offer was also reasonable. *See Tackett*, 653 A.2d at 266.

Maccari's primary argument on appeal is that a reasonable jury could conclude, based on the handwritten notes of Bituminous's claims examiner, that the company valued his claim at $534,000 as of May 2006, but waited until February 2007 - over nine months later - to make any settlement offer. We do not think that any reasonable jury could conclude that Bituminous's valuation of Maccari's claim is reflected in the ambiguous handwritten notes of a single claims examiner that were never documented in internal claims evaluations or even communicated to other Bituminous employees. And, even if these notes did represent Bituminous's valuation of Maccari's claim, it was still reasonable, as we have explained above, for Bituminous to wait until Maccari's surgery had time to take effect before assessing his condition.

Finally, we agree with the District Court's conclusion that Maccari cannot recover punitive damages in this case because there is no evidence of "egregious conduct" by Bituminous that is either "malicious" or reflective of a "reckless indifference" to his plight. *Tackett*, 653 A.2d at 265-66. Bituminous's delay in offering a settlement to

Maccari, even if it were unreasonable, is insufficient to warrant punitive damages. *See*

*id.*

## IV. Conclusion

For the foregoing reasons, we will affirm summary judgment for Bituminous. [2]

---

[2] Maccari appeals several privilege rulings made by a Magistrate Judge and adopted by the District Court. As Maccari acknowledges, he did not timely object to these ruling before the District Court and thus we will not consider them. *See* Fed. R. Civ. P. 72(a). Maccari also appeals the District Court's consideration of prior arbitration outcomes in assessing whether Bituminous acted reasonably, arguing that they are inadmissible. We need not reach this argument because, as our analysis shows, summary judgment is warranted even if this evidence is disregarded. *See Allegheny Intern., Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1427 (3d Cir. 1994). For the same reason, we do not reach the argument that the District Court improperly considered a letter from the Delaware Insurance Commissioner reporting an absence of complaints against Bituminous.