**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 11-1241

WILIAN TAVERAS GOMEZ; BARBARA GOMEZ; WILFREDO RAFEAL
TAVERAS; WILIANA TAVERAS,

Appellants

v.

WILLIAM J. FEISSNER, JOHN J. SOPRANO, JOSHUA WINTERS,
GERRY GALLAGHER, JASON ZOLA, ROBERT FERDINAND, DAVID COFFMAN,
MARK ZOLA, JAMES DIXON, DARRYL LEDGER, KEVIN WAGNER, DAVID
ZAPOTOCKY, JOHN LEONARD, ROBERT ZIENTEK, WALTER MAZUR,
CHRISTOPHER OROZCO, LEONAL RAMIREZ, DANE EPPLEY,
DAVID CHRISTINO

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-08-cv-00619)
District Judge:  Honorable A. Richard Caputo

Argued on September 20, 2011

Before:  AMBRO, CHAGARES and ROTH, Circuit Judges

(Opinion filed: March 30, 2012)

Laurence E. Norton, II, Esq. **(Argued)**
Peter Zurich, Esq.
Community Justice Project
118 Locust Street
Harrisburg, PA   17101

*Counsel for Appellants*

William H. Ryan, Esq.
Acting Attorney General
Calvin R. Koons, Esq. **(Argued)**
Senior Deputy Attorney General
Patrick S. Cawley, Esq.
John G. Knorr, III, Esq.
Chief Deputy Attorney General
Office of the Attorney General
Appellate Litigation Section
15th Floor, Strawberry Square
Harrisburg, PA   17120

Peter J. Smith, Esq.
United States Attorney
Timothy S. Judge, Esq. **(Argued)**
Assistant U. S. Attorney
United States Attorney's Office
235 N. Washington Avenue, Suite 311
Scranton, PA   18501

*Counsel for Appellees*

----

O P I N I O N

----

**ROTH**, Circuit Judge:

Plaintiffs Wilian Taveras Gomez, Barbara Gomez, Wilfredo Taveras and Wiliana Taveras appeal the grant of summary judgment to federal and local officers on claims that the officers violated their constitutional rights while searching their home.  We will affirm the District Court's judgment as to the federal officers and local officer Jason Zola, but with respect to local officer William Feissner, we will reverse and remand to the District Court.

## I. BACKGROUND

The Gomezes reside at 9 West Monroe Avenue in West Hazelton, Pennsylvania, in a building that also contains another residence, 11 West Monroe Avenue. The building contains an unusual feature - a bathroom in Number 11 has a door that opens directly into Number 9. The Gomezes claim that this door had been sealed shut by a strip of plastic attaching it to its frame, blocking access from one residence to the other.

In 2007, a resident of Number 11, Bienviendo Guerrero, came under the suspicion of local police for engaging in illegal drug sales. Accordingly, defendant William Feissner, a Corporal with the Butler Township Police and a member of the Luzerne County Drug Task Force, obtained a search warrant for Number 11. On September 5, 2007, a team of officers including Feissner, defendant Jason Zola, a detective with the Hazleton Police, and defendants Dane Eppley and David Christino, two federal agents from Immigration and Customs Enforcement, executed that warrant. Zola lead the team that initially entered and secured the building. Feissner led the group that searched for evidence. Eppley and Christino were present to determine the immigration status of any persons the team encountered and to serve as translators for any Spanish speakers.

As the operation began, Zola's team entered Number 11 and secured all of its rooms. The team eventually came to the door in the bathroom which led to the Gomezes' residence. They perceived the other side of the door as a potential "threat area" that needed to be secured. They allegedly kicked down the door and went through it. The team then encountered each of the Gomezes in various rooms and placed Wilian Taveras Gomez and Wilfredo Taveras in handcuffs. Once Zola and his team had secured both

3

homes, which took five to fifteen minutes, they left the scene. Feissner and Christino then took the Gomezes to the kitchen of Number 11, where they were held while Feissner and his team searched for evidence.

The Gomezes allege that when Wilian Taveras Gomez asked why his home was being searched, Christino said to Wiliana Taveras, "Tell your father to shut up or we will put the cuffs back on him. He is not a citizen!" They further allege that officers searched their home for three hours, detained them for that duration, and seized $605.00.

The Gomezes alleged that these actions violated their constitutional rights and asserted a number of claims against the officers. The District Court granted the officers summary judgment on all claims, and the Gomezes now appeal on their claims brought under 42 U.S.C. §§ 1983 and 1981(a). We have jurisdiction pursuant to 28 U.S.C. § 1291, and our review is *de novo*. *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011).

## II. DISCUSSION

The District Court granted the officers summary judgment on the § 1983 and § 1981(a) claims on the basis of qualified immunity. Under the doctrine of qualified immunity, government officials are shielded from civil damages liability for official conduct as long as it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A legal right is clearly established if "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The officers here are entitled to qualified immunity, then, if (1) the rights the Gomezes claim to have been deprived of

4

were not clearly established, or (2) the officers' alleged conduct did not deprive the Gomezes of those rights. *Ray v. Twp. of Warren*, 626 F.3d 170, 174 (3d Cir. 2010). We will examine the officers' entitlement to qualified immunity under this standard for each claim.

### A. Unreasonable Search

The Gomezes claim that their Fourth Amendment right to be free from an unreasonable search was violated when Feissner and Zola searched their home after they knew or should have known that it was a separate residence from Number 11. "Searches . . . inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). Even when officers operate with a warrant, they must exclude any areas that they know or should know the warrant does not authorize them to search. *United States v. Ritter*, 416 F.3d 256, 266 (3d Cir. 2005). If they mistakenly begin to search such an area, they must stop as soon as they are put on notice of their error. *Maryland v. Garrison*, 480 U.S. 79, 87 (1987); *Ritter*, 416 F.3d at 266. Based on these principles, we hold that there is a clearly established right to be free from a search of one's home by officers who know or should know that such a search is unauthorized.

It is undisputed that Feissner searched the Gomezes' home even though the warrant pursuant to which he was operating specifically authorized a search only of Number 11. The Gomezes allege, moreover, that he should have known during his search that their home was a separate residence from Number 11. In support of this contention, the Gomezes' point to Feissner's admissions that he was aware that the building had multiple doorways, garages, electrical boxes, and satellite dishes and that he

5

had previously considered the "real possibility" that it contained multiple residences. They further allege that, based on his observations as he walked through the building, and particularly upon finding a second kitchen, Feissner should have realized that he had entered a separate residence. From our review, we conclude that this account does make out a violation of the Gomezes' clearly established Fourth Amendment rights. Feissner therefore does not have qualified immunity from this claim.

The Gomezes allege that Zola entered their home as part of his effort to secure the building. They concede that this was legal and that Zola was permitted to conduct a protective sweep of their home. They claim that this sweep lasted five to fifteen minutes and that at the conclusion of that period, Zola departed. They do not allege that Zola searched their home for evidence. The Gomezes thus accuse Zola of legally entering their home, conducting an appropriate protective sweep, and then leaving. These allegations fail to establish that Zola violated the Gomezes' right to be free from an unreasonable search, and he thus possesses qualified immunity from this claim.

### B. Unreasonable Seizure

The Gomezes also claim that Feissner and Zola violated their right to be free from unreasonable seizure by detaining them for three hours during the search of their home. A "seizure" occurs when a government officer, "by means of physical force or show of authority . . . restrains the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Under clearly established Supreme Court precedent, it is reasonable for officers to seize the occupants of a home while conducting a constitutionally valid search thereof. *Michigan v. Summers*, 452 U.S. 692, 705 (1981). But this is true only for the duration of

6

the search. When the search if completed, the authority expires. *Id.* Moreover, under *Garrison*, it is clearly established that once officers know or should know that they are without authority to continue a seizure, they must end it.

The Gomezes allege that Feissner should have known after fifteen minutes that he had no authority to search their home. It is undisputed that for three hours beyond this point, the Gomezes were involuntarily detained by either Feissner or officers under his command. These allegations suffice to make out a violation of the Gomezes' clearly established right to be free from unreasonable seizure, and Feissner accordingly does not have qualified immunity from this claim.

As for Zola, the Gomezes allege that he was present only until the conclusion of the protective sweep of their home. Thus, he cannot be held responsible for their three hour detention during the subsequent search for evidence. Given the Gomezes' concession that the protective sweep was a legal search, any seizures during that sweep would be valid under *Summers*. Zola thus has qualified immunity from this claim.

### C. Unreasonable Seizure of Property

Wilian Taveras Gomez claims that the confiscation of $605.00 in cash from his dresser violated his Fourth Amendment right to be free from unreasonable seizure. A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Subject to a limited number of exceptions not at issue here, "a seizure of personal property [is] *per se* unreasonable . . . unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be

7

seized." *United States v. Place*, 462 U.S. 696, 701 (1983). Under *Garrison*, officers who know or should know that these requirements are not met must abstain from seizing personal property. An officer who fails to adhere to this requirement violates the property owner's clearly established Fourth Amendment right to be free from unreasonable seizure.

Wilian Taveras Gomez alleges that Feissner searched the Gomez home after he should have known that he had no warrant to do so, and it is undisputed that he seized $605.00 from Wilian Taveras Gomez's dresser during that search. This account is sufficient to state a claim that Feissner violated his Fourth Amendment right to be free from unreasonable seizure, and Feissner therefore does not have qualified immunity from this claim. Because, however, there is no allegation that Zola seized any property, he does have qualified immunity.

### D. Equal Protection

Wilian Taveras Gomez claims that Eppley and Christino violated his constitutional right to equal protection when Christino said to his daughter, "Tell your father to shut up or we will put the cuffs back on him. He is not a citizen!" To state a valid equal protection claim, a plaintiff must allege that he "receiv[ed] different treatment from that received by other individuals similarly situated." *Kuhar v.Greensburg-Salem Sch. Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980). Because Wilian Taveras Gomez does not allege that either Eppley or Christino treated him differently from any similarly situated individuals that actually existed, he fails to state a valid equal protection claim against them. The federal agents are thus entitled to qualified immunity on this claim.

8

**III.  CONCLUSION**

For the reasons stated above, we will affirm the District Court's grant of summary judgment as to Zola, Eppley, and Christino but will reverse as to Feissner and remand this case for further proceedings.