NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3646
_____

AARON WILLIAMS,

Appellant

v.

GUARD BRYANT FIELDS, BARRY JONES, GUARD, SERGEANT COATES,
GUARD HUGHES, C/O LACKEY, LOUIS GIORLA,
COMMISSIONER OF PRISONS, PRISON HEALTH SERVICES,
CITY OF PHILADELPHIA, CITY HALL (MAYOR'S OFFICE)

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-00781)
District Judge: Hon. J. Curtis Joyner
_____

Argued: May 31, 2013

Before: JORDAN and VANASKIE, *Circuit Judges*, and
RAKOFF[*], *Senior District Judge.*

(Filed: August 23, 2013)

_____

[*] The Honorable Jed S. Rakoff, United States Senior District Judge for the Southern
District of New York, sitting by designation.

Bruce C. Bishop, Esquire
Kathryn J. Gainey, Esquire
Jill C. Maguire, Esquire **[ARGUED]**
Jessica I. Rothschild, Esquire
Steptoe & Johnson
1330 Connecticut Avenue, N.W.
Washington, DC 20036

*Counsel for Appellant*

Kelly S. Diffily, Esquire **[ARGUED]**
City of Philadelphia Law Department
17th Floor
1515 Arch Street
One Parkway
Philadelphia, PA 19102-0000

*Counsel for Appellees, Bryant Fields, Barry Jones,*
*Coates, Hughes, Lackey, Louis Giorla, and*
*City of Philadelphia*

Alan S. Gold, Esquire **[ARGUED]**
Gold & Ferrante
261 Old York Road
Suite 526
Jenkintown, PA 19046-000

*Counsel for Appellee, Prison Health Services*

_____

OPINION OF THE COURT
_____

RAKOFF, *District Judge*.

Aaron Williams appeals a final judgment of the United States District Court for the Eastern District of Pennsylvania dismissing Williams' claims for denial of medical treatment and excessive force stemming from two incidents occurring while he was detained pending trial at the Philadelphia Detention Center. Williams claims that, in April

2

and June 2008, officers at the Detention Center beat him without provocation, and that

Prison Health Services, Inc. ("PHS"), the private contractor operating the medical

department at the Detention Center, refused to fill his prescription for pain killers after

the second of these altercations pursuant to a policy of denying such treatment. The

District Court granted summary judgment in favor of PHS on Williams' claim for denial

of medical treatment, finding that Williams had failed to show that refusal to fill the

prescription was undertaken pursuant to a PHS policy; dismissed the same claim against

the City of Philadelphia at the start of trial, holding that Williams could not maintain his

claim without a medical expert to testify to whether his injuries were serious enough to

raise constitutional concerns; and granted judgment as a matter of law at the close of

Williams' case as to the remaining defendants on his excessive-force claims, finding that

the officers had used a justifiable amount of force because Williams had been

"confrontational." For the following reasons, we affirm the dismissal of Williams' denial-

of-treatment claims and reverse and remand for retrial on Williams' excessive-force

claims.

The factual allegations, taken most favorably to appellant, are as follows: [1]

---

[1] The district court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. "We exercise plenary review over a district court's grant of summary judgment and apply the same standard of whether genuine issues as to material fact exist such that a reasonable jury could return a verdict for the plaintiff." *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011). We also apply largely the same standard to a district court's grant of a motion for judgment as a matter of law. *See Wittekamp v. Gulf & W., Inc.*, 991 F.2d 1137, 1141 (3d Cir. 1993). Thus, in both circumstances, we must determine whether, "viewing the evidence in the light most favorable to [the non-moving party] and giving him the advantage of every fair and

3

At all times relevant, Aaron Williams was a pretrial detainee held at the Philadelphia Detention Center awaiting trial on burglary charges. On April 26, 2008, Williams' dormitory section was the last group in the Detention Center to be served lunch, and the cafeteria had run out of various items. When Williams approached Corrections Officer Malissa Hughes to ask for more trays and food, Hughes refused, and Williams asked to see a supervisor. Hughes then hit Williams with a ruler, and, when she attempted to hit him again, Williams grabbed the ruler out of her hands. Hughes then began hitting Williams with her fists and attempted to knee him in the groin. Williams testified at trial that he did not hit Hughes, and that when he was told he would be sent to the holding section, he offered to go willingly. When the Detention Center's response team arrived, a member of the team asked Hughes whether Williams had "put his hands on" her. (App. at 309.) Hughes falsely stated that Williams had, at which point a member of the response team grabbed Williams by the collar and another grabbed the cuff of his pants, knocking him to the ground. The four members of the response team and Hughes then began kicking Williams. Kevin Mason, another inmate and an eyewitness who testified on behalf of Williams, testified that Williams was subdued on the ground at this point but that Corrections Officer Charlene Lackey said, "Move, move, move, let me spray him," and repeatedly pepper-sprayed Williams in the face. (App. at 342.)

In the second incident, on June 9, 2008, inmates in the section directly across from Williams' section threw water at their guards, leading Sergeant Andrew Coates to initiate

reasonable inference, there is insufficient evidence from which a jury could reasonably find liability." *Id.*

a search of the section. While Sergeant Coates was speaking to the responsible individuals, someone from Williams' section yelled, "Hurry up and get it over with and get off the block." (App. at 312.) Coates looked at Williams (who testified he did not make the statement) and instructed Corrections Officers Bryant Fields and Barry Jones to handcuff Williams. Officer Fields approached Williams, who was wearing only a pair of shorts and slippers, and told him to get dressed. After Williams repeatedly questioned the officers as to why they were directing their attention to him, Jones swung at Williams from behind, and his forearm hit Williams' nose. Jones then put Williams in a headlock, while Fields hit Williams in the face repeatedly, and Jones slammed Williams to the floor, causing Williams to hit his head. At one point, Williams lost consciousness. Williams testified that he never struck any of the guards, nor did he attempt to do so. When the supervising lieutenant arrived, he found several officers and Sergeant Coates standing in Williams' section with Williams lying on the floor.

After this second altercation, Williams was taken to the medical department, run by PHS, in order to receive treatment for his injuries. Williams had a laceration to his forehead, "swelling and deformity [to the] bridge of [his] nose," and difficulty breathing through his nose. (App. at 94.) A PHS physician sutured Williams' forehead wound and ordered an x-ray of his nose. The physician prescribed Percogesic, a combination of acetaminophen and an antihistamine, which would serve as a pain reliever and relieve nasal swelling, and gave him an initial dose at his examination. However, PHS later refused to fill the prescription, stating that Williams must instead purchase Tylenol at the commissary. Williams, lacking funds to make such a purchase, therefore received no

5

further pain medication for his broken nose despite the prescription by his treating physician.

Williams then filed a grievance on June 30, 2008, in which he wrote that he "was not afforded any medical care or medication for my—what should have been—obvious pain. I was told that I would [have] to buy pain killers from the commissary. I explained that I had no money to buy pain killers but was told that [a] new policy pr[e]vents me from being prescribed pain killers." (App. at 182.) The prison's grievance response contained a "factual findings" section, reading: "Inmate was prescribed Percogesic on 6/9/08 for pain. For chronic pain, Tylenol is available at commissary, if inmate has no funds, please contact social services." (App. at 183.) Williams appealed this determination and subsequently received a letter from Commissioner Louis Giorla, which denied Williams' appeal. Commissioner Giorla wrote, in part, that Williams was "advised to get Tylenol from the commissary." (App. at 184.)

On March 11, 2009, Williams filed *pro se* a complaint bringing claims under 42 U.S.C. § 1983. As relevant to the instant appeal, Williams filed claims against Officers Lackey and Hughes for excessive force in relation to the April 2008 incident; against Officers Fields and Jones and Sergeant Coates for excessive force in relation to the June 2008 incident; and against PHS and the City of Philadelphia for denial of medical treatment.[2]

---

[2] Williams also asserted excessive force, failure-to-train, and failure-to-discipline claims against the City of Philadelphia and Prison Commissioner Louis Giorla that are not at issue on this appeal.

6

On October 27, 2009, the district court granted summary judgment to PHS on Williams' denial-of-medical-treatment claim. The only part of that ruling that Williams here appeals is the district court's determination that Williams had failed to make out a triable case that the denial of Williams' pain medication was pursuant to a policy of PHS.

On August 29 and 30, 2011, the district court held a jury trial on Williams' claims against the remaining defendants. Before trial began, the district court granted judgment in favor of the City on Williams' denial-of-treatment claim, finding that those claims could not proceed because Williams did not have a medical expert to testify as to whether Williams' injuries from the second altercation rose to the level of seriousness required for a constitutional denial-of-treatment claim. Accordingly, the trial proceeded solely as to the issue of excessive force.

At the close of Williams' case-in-chief, the district court granted judgment as a matter of law in favor of the City on Williams' failure-to-train and failure-to-discipline claims, and in favor of Commissioner Giorla based on his lack of personal involvement in the excessive force claims. Those rulings are not challenged on appeal. Defense counsel also made a motion for judgment as a matter of law on behalf of the corrections officer defendants. At this point, the district court engaged in an extended colloquy with Williams that included a discussion of Williams having been confrontational with the guards. The Court then granted judgment as a matter of law in favor of the remaining

defendants. (App. at 364–74.) The district court entered final judgment on September 1, 2011, and Williams timely appealed.[3]

## DISCUSSION

### A. Excessive Force Claims

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).[4] Whether this standard has been met "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 320–21. "Force that exceeds that which is reasonable and necessary under the circumstances is actionable." *Giles v. Kearney*, 571 F.3d 318, 328 (3d Cir. 2009).

Williams argues that the district court erred in granting judgment as a matter of law at the close of his case-in-chief on his excessive force claims against the corrections officer defendants because he presented evidence from which a reasonable jury could infer that the guards used excessive force against him. As to both incidents, Williams further argues that the district court, rather than drawing all inferences in Williams' favor

---

[3] On January 25, 2012, a motions panel of this court appointed pro bono counsel to represent Williams in this appeal.

[4] As a pretrial detainee, Williams was subject to the protections of the Fourteenth Amendment, not the Eighth Amendment. However, we have stated that "the Due Process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Boring v. Kozakiewicz*, 833 F.2d 468, 471 (3d Cir. 1987). Accordingly, we analyze Williams' claims under Eighth Amendment standards.

as the non-movant, instead substituted its own subjective judgment that Williams' behavior permitted the guards to act as they did.

The appellees do not contest the notion that the district court erroneously relied on its own factual findings as to whether the guards' actions were justified, rather than leaving it to the jury to decide. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) ("In determining whether the evidence is sufficient to sustain liability, the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version."). Appellees argue, however, that the district court's judgment can be upheld on alternative grounds.

As to the April 2008 incident, appellees argue that Williams failed at trial to present evidence of any injuries he suffered as a result of the officers' alleged use of excessive force, such as testimony regarding any subjective pain he experienced or medical records that would establish such pain. However, appellees confuse force with injury.

"[F]orce, rather than injury, is the relevant inquiry" for excessive force claims. *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1181 (2010) (per curiam) (Thomas, J., concurring). Thus, the Constitution is violated "[w]hen prison officials maliciously and sadistically use force to cause harm," regardless of "whether or not significant injury is evident." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Here, the evidence that Williams, while taking no physical action himself, was repeatedly kicked, stomped upon, and pepper-sprayed, was sufficient to raise a reasonable inference of excessive force. It was for the

jury to weigh that evidence and determine its credibility. Judgment as a matter of law was therefore wrongly granted as to Officers Hughes and Lackey.

As to the June 2008 incident, appellees concede that judgment as a matter of law was erroneously granted as to Officers Fields and Jones, who, Williams alleges, punched him and slammed him to the ground to such an extent that Williams lost consciousness. Appellees argue, however, that judgment as a matter of law was properly granted as to Sergeant Coates, as they claim that Williams failed to present evidence to show that Coates saw Fields' and Jones' use of force or had a reasonable and realistic opportunity to intervene. *See Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002) ("[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so.").

Crediting all appropriate inferences in favor of Williams, however, the jury could have found that the evidence showed that Coates had a reasonable opportunity to observe the incident, as he was in the adjacent section, which faces Williams' section and which is separated from it only by bars, from which he initially saw Williams and instructed Fields and Jones to handcuff him. Moreover, the jury could have reasonably inferred that Coates must have seen the conduct of Officers Fields and Jones and declined to intervene, as the testimony at trial suggested that the altercation did not stop until the lieutenant arrived, at which point Coates was present in Williams' section. Therefore, the district court's grant of judgment as a matter of law must be reversed as to Sergeant Coates, as well as, concededly, to Officers Fields and Jones.

10

In sum, the district court's grant of judgment as a matter of law on appellant's excessive force claims is reversed as to defendants Hughes, Lackey, Fields, Jones, and Coates and remanded for a new trial.[5]

**B. Denial of Medical Treatment Claims**

"'Acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs' constitute cruel and unusual punishment under the Constitution." *Boring v. Kozakiewicz*, 833 F.2d 468, 471 (3d Cir. 1987) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). Thus, a plaintiff must show "(1) that the prison officials were deliberately indifferent to the inmates' medical needs and (2) that those needs were serious." *Reynolds v. Wagner*, 128 F.3d 166, 172 (3d Cir. 1997). Because the City of Philadelphia is a municipality and PHS its contractor (and because Williams did not sue any individual PHS employee who refused to fill his prescription), Williams must prove that his constitutional rights were violated as a result of a policy or custom to succeed on his § 1983 claims.[6] *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying a *Monell* theory to a claim against PHS).

---

[5] Williams seeks reassignment of the case to a different district judge. The judge's handling of this case does not display the kind of antagonism that warrants such an extraordinary step. We have every confidence that, on remand, the judge will be fair and impartial to all parties in the case.

[6] Although Williams raises in a footnote the argument that *Monell*'s limitations may not apply to a private contractor, he failed to raise this issue below and therefore has waived the issue. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 261 (3d Cir. 2009) ("Absent exceptional circumstances, this Court will not consider issues raised for the first time on appeal.").

As part of its submission below in support of its motion for summary judgment, PHS appended the Philadelphia Prison System's policy on "Access to Care," which provides that "prescriptions and referrals will be honored unless overridden by a senior physician for valid reasons," and that "prescribed care must be provided unless a senior physician overrides a prescription or the inmate refuses care." (App. at 195.) Furthermore, the Access to Care policy provides that "inmates do not have the right to receive convenience care," defined as "health care requested by an inmate, which does not require treatment by a QHCP [Qualified Health Care Professional], and that "QHCP(s) should determine which services are 'convenience care services' and convey this conclusion to the individual inmate." (App. at 192, 202.) As explained in the affidavit of Acting Health Services Administrator Maureen Heaney, which was also before the district court on the motion for summary judgment, "Mr. Williams alleges . . . that PHS policy caused PHS personnel to instruct him to buy over-the-counter pain medication at the commissary even though he could not afford the cost. The policy to which Mr. Williams refers was created and controlled by the Philadelphia Prison System. PHS did not create such policy and does not control such policy." (App. at 151.)

In its opinion granting summary judgment, the district court found that "PHS does not dispute that there is a policy requiring inmates to pay for over-the-counter medication," although "[t]his policy is established by the City of Philadelphia, not PHS." (App. at 8–9.) Moreover, the court stated that "[e]ven though a PHS employee may have violated Plaintiff's constitutional rights, the actions of individual PHS employees must be attributable to a relevant PHS policy or custom in order for liability to attach to PHS."

12

(App. at 9–10.) Thus, the district court found that "[t]he failure to supply the prescribed medication in this specific instance involves the interpretation of the City of Philadelphia's policy by an individual employee of PHS. Whether the medication was required medication or convenience care in this single instance was a decision made by an employee of PHS, not a widespread PHS policy." (App. at 11.) Therefore, the district court found that Williams failed to meet his burden of establishing a policy or custom attributable to PHS and granted PHS's motion for summary judgment.

Williams argues on appeal that the district court ignored evidence in the record creating a genuine dispute of material fact as to whether PHS had a custom, policy, or practice of denying prescribed medication, and as to whether this was PHS's (as opposed to the City's) custom or practice. We do not agree. There is no evidence that PHS had any policy separate from the City's Access to Care policy. Indeed, there is not even evidence of another situation in which a detainee was denied a pain medication prescription. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) ("[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). Moreover, neither Williams' claim in his grievance form that he was told at an unidentified time by an unidentified person that a new policy prevented him from being prescribed pain killers, nor the factual findings in response to that grievance— stating only that Williams was prescribed Percogesic, "for chronic pain Tylenol is available at commissary," and "if inmate has no funds, please contact social services"—

13

provide sufficient evidence of a PHS policy of denying prescription pain medications to survive summary judgment. We therefore affirm the District Court's grant of PHS's motion for summary judgment on Williams' denial-of-treatment claim.

Turning to Williams' denial-of-medical-treatment claim against the City of Philadelphia, we conclude that the district court did not err in dismissing Williams' claim before the beginning of trial for failure to present an expert medical witness. As an initial matter, federal judges have the inherent power to manage cases that come before them, and they may appropriately refuse to try a claim when they discover, on the eve of trial, that the claim lacks merit. *Cf. Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962) (discussing courts' "'inherent power' . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). Where, as here, the district court determined at the outset of trial that the plaintiff would not be able to succeed on his claims as a matter of law, the court was not obligated to expend the court's or the jury's time hearing such claims.

Furthermore, the district court properly required Williams to present a medical expert to testify as to whether Williams' injuries were serious enough to rise to the level of constitutional scrutiny for denial of medical treatment. *See Estelle*, 429 U.S. at 104 (requiring, along with "deliberate indifference," that a prisoner's injuries be sufficiently "serious" to trigger constitutional scrutiny). Although we have stated that expert testimony is not required to establish a serious medical need "[i]n some situations in which the seriousness of injury or illness would be apparent to a lay person," the example we gave of such a situation was "a gunshot wound," the seriousness of which is apparent

14

to any juror. *Boring*, 833 F.2d at 473. By contrast, in many cases, "[a]s laymen, the jury would not be in a position to decide whether any of the conditions described by plaintiffs could be classified as 'serious.'" *Id.* Here, the injuries claimed by Williams—a broken nose and facial lacerations—while perhaps painful, are arguably no more serious than the nerve injury suffered in *Boring*, which we held required expert testimony to establish its seriousness. *See id.* As in *Boring*, "[i]n these circumstances, the district court [may] properly require[] expert medical opinion, and in its absence properly withdr[a]w the issue from the jury." *Id.* at 473–74. Accordingly, we affirm the district court's dismissal of Williams' denial-of-treatment claims against the City of Philadelphia as well.

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of PHS as to Williams' denial-of-medical-treatment claim and dismissal of that claim against the City of Philadelphia, but we reverse the district court's grant of judgment as a matter of law in favor of defendants Fields, Jones, Coates, Hughes, and Lackey and remand for a new trial.